Juan BALDERAZ, et al., Plaintiffs,

v.

Leonard J. PORTER, et al., Defendants.

No. C-3-83-581.

United States District Court,
S.D. Ohio, W.D.

Dec. 14, 1983.

David W. Bruns, Coldwater, Ohio, Howard E. Swinehart, Troy, Ohio, Richard H. Wallace, Sidney, Ohio, Gregory D. Wilson, Peter R. VanArsdel, St. Marys, Ohio, for plaintiffs.

Gordon H. Savage, Dayton, Ohio, for defendant C.M.I., Inc.

Gene W. Holliker, Chief, Federal Litigation Section, Atty. Gen., State of Ohio, Columbus, Ohio, for defendants Walsh, Cox, Reich, Saunders and Smith.

James G. Neary, Asst. Atty. Gen., State Department Section, Columbus, Ohio, for defendants Porter, Ackerman and Jackson.

## DECISION AND ENTRY SUSTAINING IN PART, AND NOT RULING UPON IN PART, MOTIONS TO DISMISS THE AMENDED COMPLAINT; FURTHER PROCEDURES SET

RICE, District Judge.

In this unusual lawsuit, Plaintiffs allege that the use of intoxilyzer equipment by Ohio law enforcement officials has resulted in the violation of their federal due process and equal protection rights. This violation comes about, Plaintiffs assert, from interference with the proper operation of the intoxilyzer equipment by radio frequencies (Radio Frequency Interference or RFI), which interference the various Defendants allegedly knew about and failed to disclose to the Plaintiffs. Plaintiffs have also moved for a class certification. Defendants, various officials involved with enforcing the Ohio drunk driving law, Ohio Rev. Code Ann. § 4511.19, and a private company which manufactures the equipment in question, have moved (docs. # 23 & # 24) to dismiss the amended complaint. Said Defendants also oppose the class certification. The grounds raised in support of the motions may be loosely described as "abstention" and *Lyons* defenses and "non-abstention" defenses.

For the reasons outlined below, the Court finds most of the "non-abstention" defenses not to be well taken. However, the Court holds that most, if not all, of the various Plaintiffs' actions are barred by the abstention principles found in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny. Whether the *entirety* of the lawsuit is so barred will depend on the results of a class certification hearing and other procedures set forth in this opinion.

## I. PROCEDURAL BACKGROUND

Plaintiffs filed this lawsuit on June 23, 1983, under 42 U.S.C. § 1983, seeking broad injunctive and other equitable relief. Plaintiffs also moved for a preliminary injunction. On July 5, 1983, this Court held a hearing on the motion, and received certain testimony and evidence proffered by Plaintiffs. The Court adjourned the hearing, subject to reopening for Defendants to present their case. The Court directed Plaintiffs to file an amended complaint, setting out their legal theories with greater clarity, and, further, directed all parties to file further memoranda on the legal issues involved. The parties have so complied.

The amended complaint names nine individuals as Defendants, as well as C.M.I., Inc., the manufacturer of the intoxilyzer equipment. The individuals are employees of various agencies of the state of Ohio, including the Department of Highway Safety, the State Highway Patrol, and the Director of Health. Sixteen plaintiffs are named, all of whom (but one) were charged with violations of the drunk driving law in 1982 and 1983 and can be classified as follows (as of the time of the filing of the Amended Complaint): five have their cases still pending, six pleaded guilty or no contest, three were found guilty after trial (and presumably are appealing), and one was found not guilty after trial. The final Plaintiff was arrested in 1980, and the "John Doe" defendant (a State Highway patrolman) allegedly refused to let his expert inspect the intoxilyzer; the complaint does not state what happened to that Plain-

tiff, or how his experiences mesh with the others.[1]

Plaintiffs further allege that the intoxilyzer "has been and is affected in an unpredictable and arbitrary manner by radio frequencies," and that various Defendants "intentionally or recklessly" withheld information in the criminal proceedings which demonstrated the "unreliable nature of intoxilyzers." The complaint sets out four claims of relief, alleging that these and other actions (1) violated the Plaintiffs' due process and equal protection rights, (2) demonstrated that Defendants unlawfully conspired, under 42 U.S.C. § 1985, (3) unlawfully conspired under 42 U.S.C. § 1983, and finally (4) that Defendants' actions justify certification of a class of Ohio drivers "who have been, who are, and who will be subject to the criminal and administrative penalties of Ohio Revised Code § 4511.19 and § 4511.191 due to the use of the Intoxilyzer in the State of Ohio." Plaintiffs also prayed for extensive injunctive, declaratory and other equitable relief, as well as for considerable damages.

In light of this Court's expression of misgivings concerning the viability of granting equitable relief, given the *Younger* line of cases and *City of Los Angeles v. Lyons*, —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), Plaintiffs have also purported to withdraw their motions for a temporary restraining order and a preliminary injunction (doc. # 19).

## II. DEFENDANTS' MOTIONS TO DISMISS

As noted above, Defendants have moved to dismiss the amended complaint described above, pursuant to Fed.R.Civ.P. 12(b)(6), for the reason that it fails to state a claim upon which relief can be granted. With such motions, the Court must accept as true all well-pleaded allegations in the complaint, and only sustain the motions if it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.

*Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir.1983); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976).

## A. NON-ABSTENTION DEFENSES

Aside from arguments that Plaintiffs' requests for relief are barred by the *Younger* line of cases and *Lyons*, Defendants also contend that Plaintiffs' causes of action are barred on other grounds, as well. Given the Court's conclusion, set out below, that the *Younger* and *Lyons* arguments may not *entirely* bar the lawsuit, the Court deems it appropriate to address the nonabstention arguments.

■ Initially, Defendant C.M.I. points out that the amended complaint lacks a jurisdictional statement, as required by Fed.R.Civ.P. 8(a). Plaintiffs cite 42 U.S.C. §§ 1983 & 1985, but those provisions are not jurisdictional. This defect can be cured, of course, by further amending the complaint, as set out below.

■ Defendants next question, though not vigorously, whether Plaintiffs have constitutional claims at all. In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the court held that a prosecutor may violate his or her duty under the due process clause to disclose exculpatory information to a defendant, if the "omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* at 108, 96 S.Ct. at 2399. *See also, Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). While raised in an unusual factual setting, the Court cannot hold that the facts stated in the amended complaint, taken as true, would not fall under the Plaintiffs' due process rights established in *Agurs*. Similarly, Plaintiffs' allegation that Defendants did not utilize the intoxilyzer equipment in a consistent manner with similarly situated drivers could, conceivably, raise an equal protection claim. *Cf. Reynolds v. City of Dayton*, 533 F.Supp. 136, 140 n. 3 (S.D.

---

**1.** The status of the named Plaintiffs may have changed since the filing of the amended complaint. Any such changes may be brought to the Court's attention via the procedures set out later in this opinion.

Ohio 1982) (alleged unequal enforcement of residency rule, valid on its face, raises equal protection claim); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886).

Assuming causes of action for invasion of constitutional rights exist, the nine official Defendants [2] argue that they are entitled to *absolute* immunity from suit under the civil rights laws, citing *Briscoe v. Lahue*, —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). Therein, the Supreme Court held that a police officer who allegedly gave perjured testimony at a criminal trial was absolutely immune from suit by the convicted defendant brought under 42 U.S.C. § 1983. The Court pointed out that such an officer, like judges and prosecutors (who are also absolutely immune from suit), performs "integral functions in judicial proceedings." *Id.*, 103 S.Ct. at 1112, 1116. Likewise, Defendants argue that they should be immune for any alleged failure to disclose exculpatory evidence, since their conduct parallels that of the police officer in *Briscoe*.

■ The Court cannot agree that *Briscoe* entitles the official Defendants to absolute immunity. In *Briscoe*, the Supreme Court emphasized that absolutely immune parties—such as judges, prosecutors, and witnesses—are participants in "judge-supervised trials" and "judicial proceedings." *Id.*, 103 S.Ct. at 1115–16. The immunity of witnesses, quite logically, stems from their duty on the witness stand. *Id.*, 103 S.Ct. at 1119. Here, Plaintiffs are *not* alleging that Defendants performed unlawfully in a judicial trial or proceeding itself. Thus, neither the facts nor holding of *Briscoe* controls this case.[3]

A more apt analogy, however, could be to the absolute immunity of prosecutors, to which Defendants also refer. Generally, prosecutors are absolutely immune from § 1983 suits for "activities intimately associated with the judicial phase of the criminal process," namely, "initiating a prosecution and [ ] presenting the State's case . . . ." *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). The case law does not make clear if absolute immunity also extends to the investigative, as opposed to the advocatory, conduct of prosecutors. *Id.* at 430–31, 431–32 n. 34, 96 S.Ct. at 994–95, 995–96 n. 34; *Gray v. Bell*, 712 F.2d 490, 498–501 (D.C.Cir.1983). Nor is it clear how to draw lines between those types of conduct, or how it might be applied to the facts of this case. The Court need not resolve these questions, since the simple fact is that Plaintiffs have not sued any prosecutor of the state of Ohio. While the official misconduct alleged apparently includes certain acts by prosecutors, only officials who *assisted* the prosecutors are named as defendants. Of course, "immunity analysis rests on functional categories, not on the status of the defendant." *Briscoe*, 103 S.Ct. at 1119 (footnote omitted). The present Defendants might argue that they are "functionally" analogous to prosecutors. But this carries the analogy too far, and there is no indication in the amended complaint that Defendants were exercising quasi-judicial duties, or acting at the specific direction of prosecutors, either or both of which actions *might* entitle them to absolute immunity. *Cf. Gray v. Bell*, 712 F.2d at 497 & n. 15. (Conceivably, Defendants could present a different version of their acts than that found in the amended complaint, and later move for summary judgment on the basis of absolute immunity.

---

**2.** The private Defendant would not be entitled to immunities. *See Dennis v. Sparks*, 449 U.S. 24, 27–29, 101 S.Ct. 183, 186–87, 66 L.Ed.2d 185 (1980); *Macko v. Bryon*, 641 F.2d 447, 449–50 (6th Cir.1981) (per curiam).

**3.** This is not to say that *Briscoe* cannot be logically extended to certain proceedings outside of the courtroom, as *Briscoe* reserved decision on

that point. 103 S.Ct. at 112 n. 5. *Cf. Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.1983) (per curiam) (grand jury witness absolutely immune, relying on *Briscoe* ). However, it seems doubtful that the conduct of the Defendants alleged in the amended complaint can be characterized as logical extensions of judicial proceedings in a courthouse, as was the grand jury in *Kincaid.*

*See Coon v. Froehlich (II)*, 573 F.Supp. 918 (S.D.Ohio 1983)).[4]

Accordingly, the Court holds that the official Defendants are not entitled to absolute immunity, at least at this stage of the proceedings. Those Defendants can rely on *qualified* immunity, an affirmative defense which must be pleaded and proved by Defendants. *Alexander v. Alexander*, 706 F.2d 751, 754 (6th Cir.1983). Such qualified immunity is now governed by the "objective reasonableness of an officials' conduct, as measured by reference to clearly established law," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2739, 73 L.Ed.2d 396 (1982) (footnote omitted), and it would be difficult, if not impossible, for the Court to make such a determination at this stage of the litigation. *See Elam v. Montgomery County*, 573 F.Supp. 797 at 805 (S.D. Ohio 1983).

■ All Defendants also argue that Plaintiffs cannot state a cause of action under 42 U.S.C. § 1985. Defendants are correct on this point. In their second claim for relief, Plaintiffs only cite § 1985, but their allegations clearly invoke the conspiracy language of § 1985(3). That provision requires Plaintiffs to allege that the conspirators possess a racial or otherwise class-based invidiously discriminatory animus. *Carpenters & Joiners Local 610 v. Scott*, —— U.S. ——, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). Plaintiffs have failed to allege any sort of racial animus, or that they are of a class which might otherwise be protected by § 1985(3). *Id.*, 103 S.Ct. at 3360; *Browder v. Tipton*, 630

F.2d 1149 (6th Cir.1980). Thus, Plaintiffs' claims under § 1985(3) are not viable.[5]

■ Finally, the private Defendant, C.M.I., Inc., argues that Plaintiffs have failed to allege a sufficiently close nexus between its conduct and that of the state actors, for purposes of the lawsuit predicated on § 1983. That section requires deprivation of rights "under color" of law. Defendants who are not state officials may nevertheless be liable under § 1983 if they "jointly participated" in the actions of state officials. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931, 102 S.Ct. 2744, 2751, 73 L.Ed.2d 482 (1982); *Bier v. Fleming*, 717 F.2d 308, 310 (6th Cir.1983).

■ Defendant correctly observes that mere conclusory allegations of joint participation will not survive a motion to dismiss. *See, e.g., Glaros v. Perse*, 628 F.2d 679, 685 (1st Cir.1980). But Plaintiffs have gone beyond a mere conclusory allegation. They allege that C.M.I. manufactures and distributes the intoxilyzer equipment in question through the Ohio Department of Health, and acted "in concert" with the Defendants. Amended Complaint, ¶¶ 9, 40. These allegations, though rather bare, are sufficient to put C.M.I. on notice of the type of conduct of which Plaintiffs accuse them.

For all of these reasons, the Court rejects all but two of the "non-abstention" defenses raised by Defendants. The amended complaint lacks a jurisdictional statement, which can be cured by further amending the complaint. In addition, Plaintiffs' claims under 42 U.S.C. § 1985(3) must also be dismissed.

---

4. There is admittedly some tension and illogic between the constitutional rights Plaintiffs are asserting, which seem to flow from duties placed on prosecutors, and the failure, or inability, of Plaintiffs to bring suit against any prosecutors. Presumably, Plaintiffs would answer that the Defendants they *are* suing conspired with the immune prosecutors to violate their constitutional rights. Such Defendants could be sued despite the prosecutor's absolute immunity. *See, Dennis v. Sparks, supra*. A conspiracy claim can be brought under 42 U.S.C. § 1983. *Wade v. Bethesda Hospital*, 356 F.Supp. 380, 384 (S.D.Ohio 1973) (Kinneary, J.).

5. Conceivably, Plaintiffs could also have sued under 42 U.S.C. § 1985(2), which outlaws, *inter alia*, conspiracies to obstruct the "due course of justice" in state courts. Unlike § 1985(3), § 1985(2) does not require allegations of class-based animus on the part of Defendants. *See Kush v. Rutledge*, —— U.S. ——, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). However, as noted in the text, the allegations in the second claim for relief require the Court to only consider § 1985(3) as being raised.

## B. *LYONS* AND *YOUNGER* DEFENSES—THE ABSTENTION DEFENSES

Aside from defenses addressing the causes of action set out in the complaint, Defendants vigorously argue that Plaintiffs' claims for both equitable and monetary relief are barred by the recent *Lyons* decision, and by the *Younger* line of cases. A brief summary of these doctrines is in order.[6]

In *Lyons*, the plaintiff brought a § 1983 action against police for their use of "chokeholds" against criminal suspects, and sought injunctive and monetary relief against same. The Supreme Court held that plaintiff had no standing under Article III of the Constitution to obtain equitable relief, since there was no indication from the complaint's allegations or the record therein that plaintiff had a realistic possibility of being subject to chokeholds in the future. 103 S.Ct. at 1667–70.[7]

As the *Lyons* court itself observed, *id.*, 103 S.Ct. at 1670, the preconditions for equitable relief in civil rights actions in federal court are similar to the doctrine of equitable restraint found in the *Younger* line of cases. *Younger* itself held that a federal court should not enjoin a state criminal prosecution begun prior to the federal suit except in unusual circumstances. Companion cases to *Younger* held that the same rule applied to federal plaintiffs seeking declaratory relief (*Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)) or a ruling on the admissibility of evidence in a state criminal proceeding. (*Perez v. Ledesma*, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971)). Finding a suit for monetary relief to be as disruptive of ongoing state proceedings as suits for equitable relief, some lower courts have extended *Younger* abstention to federal civil rights damages suits, as well. *See, e.g.*, *Martin v. Merola*, 532 F.2d 191, 195 (2d Cir.1976) (per curiam); *Guerro v. Mulhearn*, 498 F.2d 1249, 1255 (1st Cir.1974). An excellent review of *Younger* and its progeny appears in 17 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure, §§ 4251–4255 (1978 & 1982 Supp.).

Apparently seeking to avoid the effect of the *Lyons* case and the *Younger* doctrine, Plaintiffs herein, as noted above, withdrew their motions for a temporary restraining order and a preliminary injunction. It is not clear if Plaintiffs also meant to delete such requests for relief from their amended complaint. In any event, as Defendants point out, the amended complaint still seeks declaratory and monetary relief in this Court, both of which are arguably forbidden by the *Younger* doctrine. To fully address Defendants' position, it is necessary to examine each of the classes of Plaintiffs previously outlined, since plaintiffs in one lawsuit should not "automatically be thrown into the same hopper for *Younger* purposes." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975).

The first class consists of those Plaintiffs whose cases are pending under

---

6. While raised by Defendants at oral argument on the preliminary injunction hearing, the Court notes that *Pullman* abstention would not be appropriate in this case. That doctrine mandates that a federal court abstain from deciding a federal constitutional issue if the issue might be mooted or presented in a different posture by a state court determination of a state law in question. *See generally Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir.1983); *Hanna v. Toner*, 630 F.2d 442, 445 (6th Cir.1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 346 (1981). It appears that some of the complaints Plaintiffs have (i.e., use of defective intoxilyzer equipment) may be raised in criminal trials under the Ohio drunk driving law. *See, e.g., Aurora v. Kepley*, 60 Ohio St.2d 73, 397 N.E.2d 400 (1979); *Ohio v. Gasser*, 5 Ohio App.3d 217, 451 N.E.2d 249 (Paulding Cty.1980). *See also,* Annot., 96 A.L.R.3d 745 (1979). But Plaintiffs are not attacking any portion of the law, and their federal causes of action, as the Court understands them, do not turn on any construction of that law.

7. This Court cited *Lyons* to counsel as the "leading case" on the subject of equitable relief in civil rights actions. Whether *Lyons* broke new ground is another matter. The majority stated that the result therein did not "extend" previous case law, 103 S.Ct. at 1667, while the dissenters were of a different opinion, *id.*, 103 S.Ct. at 1676 (Marshall, J., dissenting).

the drunk driving law. It is doubtful that these parties have standing to seek injunctive relief under *Lyons*. The record developed at the initial preliminary injunction hearing indicated that officers of the Ohio Highway Patrol, and other agencies, had been instructed to take measures to prevent radio interference with the intoxilyzer equipment.[8] Thus, there is no realistic indication that the conduct Plaintiffs complained of will occur in the future, since those alleged due process and equal protection violations flow from the initial use of allegedly improper equipment. More importantly, granting an injunction while a state criminal proceeding is pending squarely conflicts with the *Younger* doctrine. In addition, declaratory relief is barred by *Samuels v. Mackell, supra,* and *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).[9] Finally, any claim for damages relief, while the state prosecution is pending, would also be barred under *Younger.*

▮ The second class consists of those Plaintiffs who went to trial and were found guilty of violating provisions of the Ohio

drunk driving law. Neither the record nor the amended complaint indicate whether or not these Plaintiffs are pursuing appeals of these convictions in the Ohio courts. *Younger* abstention, of course, applies to *all* state criminal proceedings, trials as well as appeals. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608–09, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975); *Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052, 1058 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977). This holds true even if Plaintiffs have not properly perfected appeals of their convictions. *Huffman,* 420 U.S. at 611 n. 22, 95 S.Ct. at 1211 n. 22; *Lamb Enterprises, Inc.,* 549 F.2d at 1058 n. 5. Otherwise, the analysis regarding the first class of Plaintiffs also applies here, since the two classes are similarly situated in terms of the state proceedings pending against them. For the reasons set forth above, these Plaintiffs are not entitled to injunctive, declaratory, or monetary relief.

▮ The third and fourth classes consist, respectively, of those Plaintiffs who plead guilty or no contest,[10] and one Plain-

---

**8.** While Defendants have only made motions to dismiss, which normally only demand examination of the allegations in a complaint, the Court believes that review of the record for the limited purpose of ascertaining standing or the impact of *Younger* is proper. *See Lyons,* 103 S.Ct. at 1664, 1669; *Sovereign News Co. v. Falke,* 448 F.Supp. 306, 314–15 (N.D.Ohio 1977), *remanded on other grounds,* 610 F.2d 428 (6th Cir.1979) (per curiam), *cert. denied,* 447 U.S. 923, 100 S.Ct. 3015, 65 L.Ed.2d 1116 (1980). This seems to be particularly appropriate where, as here, the record the Court refers to was presented by the Plaintiffs themselves.

**9.** *Steffel* refined *Samuels v. Mackell,* holding that declaratory, as opposed to injunctive, relief could be available in federal court if no state prosecution is pending, and the federal plaintiff demonstrates a genuine threat of enforcement. 415 U.S. at 475, 94 S.Ct. at 1223.

**10.** Defendants also argue that the Plaintiffs who plead guilty or no contest are barred by principles of collateral estoppel and res judicata from litigating some or all of their claims in this court, citing *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). However, neither *Allen* nor the more recent decision of *Haring v. Prosise,* —— U.S. ——, 103 S.Ct. 2368,

76 L.Ed.2d 595 (1983) supports Defendants' position. *Allen* held that a § 1983 claimant could not relitigate in federal court a Fourth Amendment claim decided adverse to him in a state criminal proceeding. *Haring* held that a guilty plea by a § 1983 claimant, applying the preclusion principles of the forum state, did not bar his subsequent federal court suit for Fourth Amendment violations against the police officers who obtained certain inculpatory evidence. Although there appears to be no Ohio case law directly on point, it is doubtful that Ohio preclusion principles would bar the lawsuit brought by the Plaintiffs herein who pleaded guilty or no contest, since Ohio retains the mutuality requirement to apply collateral estoppel, *see Goodson v. McDonough Power Equipment, Inc.,* 3 Ohio St.3d 193, 443 N.E.2d 978 (1983), and the issue sought to be estopped must have been actually litigated in the prior case. *Id.* The record does not indicate that either circumstance obtains in this case. *See also, Haring v. Prosise,* 103 S.Ct. at 2374–75 & n. 10 (discussing similar Virginia law).

It appears that the recent decision of *Schultz v. Wellman,* 717 F.2d 301 (6th Cir.1983), conflicts with the Supreme Court's decision in *Haring.* In *Schultz,* plaintiff brought a § 1983 action against the Kentucky National Guard, con-

tiff who plead not guilty and was found not guilty at trial. (The Court will include in this category the one Plaintiff who was stopped by the police in 1980, who allegedly refused to let that Plaintiff's expert examine the intoxilyzer). Inasmuch as no state criminal proceedings are pending against these individuals, it seems appropriate to treat them together. With state proceedings having been completed, it seems clear that *Younger* abstention, as such, does not apply. However, it also seems clear that, based on the amended complaint and the record, these Plaintiffs have failed to demonstrate a realistic possibility that intoxilyzer equipment will be improperly used in the future, or that state officials will improperly fail to disclose certain information to them, should they be charged again with drunk driving. Accordingly, these Plaintiffs are entitled neither to injunctive (under *Lyons*) nor declaratory relief (under *Steffel v. Thompson*).

The difficult remaining question is whether the causes of action of these Plaintiffs', seeking damages for *past* conduct, remains viable. Generally, *Younger* abstention does not apply to a Plaintiff against whom no state proceedings are pending, even if *Younger* applies to another plaintiff in the *same* lawsuit. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 928–29, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975). But

> there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them....

*Id.* at 928, 95 S.Ct. at 2566. *See also, Hicks v. Miranda*, 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975). Recently, as this Court has noted, *Reynolds, supra*, 533 F.Supp. at 141 n. 5, the

Sixth Circuit has applied *Younger* to Plaintiffs against whom no state court proceedings were pending. In *Parker v. Turner*, 626 F.2d 1 (6th Cir.1980), plaintiffs sought equitable relief against the allegedly unconstitutional practices of a state juvenile court. No state court action was pending, and they did not seek monetary relief. *Id.* at 4. Nevertheless, the court "extended *Younger* principles to bar intrusive federal relief over state procedures," *id.* at 6, and affirmed the district judge's dismissal of the suit. *Id.* at 10. *Accord, Lyons*, 103 S.Ct. at 1670. The Court added that "appeal and/or habeas corpus in individual cases" would be the proper remedy. 626 F.2d at 10.

Similarly, in *J.P. v. DeSanti*, 653 F.2d 1080 (6th Cir.1981), plaintiffs in a class action sought to enjoin certain state juvenile court procedures, and also sought monetary relief. Despite the fact that no state proceedings were pending against the named plaintiffs, the Court held that *Younger* applied, since "[i]t is a certainty that there are always juvenile court proceedings pending with respect to *some* class members," *id.* at 1083 (emphasis added), and since the lawsuit would "cause even minimal interference with a pending state proceeding" involving *other* class members. *Id.* at 1084.

Arguably, *Parker* and *DeSanti* could demand abstention for even the damages portion of the lawsuit brought by the third and fourth classes of Plaintiffs (i.e., those Plaintiffs who pleaded guilty or no contest or were found not guilty after trial). Not only are the interests of those Plaintiffs "intertwined," *Hicks*, 422 U.S. at 348, 95 S.Ct. at 2291, with those of the previously described Plaintiffs, but even the litigation of damages lawsuit by the former Plaintiffs might interfere with the

tending that his discharge from employment with that entity was unconstitutional. The discharge was premised on plaintiff having pleaded guilty to a misdemeanor offense in North Carolina, *id.*, at 303, and plaintiff claimed that he was denied the opportunity to contest a supposedly illegal search and seizure conducted before his arrest for that offense. The Sixth

Circuit rejected that position, holding that any "claim he may have had was foreclosed by his knowing and intelligent plea of guilty before the North Carolina courts." *Id.,* at 307. Two cases cited for this proposition were distinguished in *Haring*, 103 S.Ct. at 2376–77. The *Schultz* decision, it should be noted, neither cited nor distinguished the *Allen* and *Haring* decisions.

pending state proceedings of the latter Plaintiffs, as occurred in *DeSanti*.[11] However, the Court hesitates to reach a firm conclusion on this point, since the specific issues have not been briefed, and the record does not indicate if the state proceedings pending against *other* Plaintiffs have terminated. The proper vehicle for making this determination would seem to be to hold an evidentiary hearing on the motion for class certification. Another avenue, as a supplement or as an alternative to the class action route,[12] would be for counsel to submit further memoranda, affidavits, etc., on the *Younger* issues raised by this Court (i.e., relevance of the *Parker* and *DeSanti* cases). This will be further discussed with counsel, as set out below.

## III. CONCLUSION

Based on the foregoing, the Court sustains in part, and overrules in part, the pending motions to dismiss the amended complaint, ruling as follows: Any 42 U.S.C. § 1985(3) cause of action found in the complaint is dismissed. The portion of the suit brought by Plaintiffs whose cases are pending at either the trial or appellate level is dismissed in its entirety, based on the *Lyons* case and the *Younger* doctrine. The portion of the suit brought by the remaining Plaintiffs, seeking injunctive or declaratory relief, is also dismissed, also based on the *Lyons* case and the *Younger* doctrine. The Court will hold a conference call with counsel on Friday, December 30, 1983, at 9:00 a.m., for the purpose of determining how to expand the record on the *Younger* issues detailed by this Court, to the extent that the lawsuit remains viable, and to discuss further procedures in this case. In addition, Plaintiffs are directed by that date to file an amendment to the amended complaint, setting forth a jurisdictional statement.

---

11. It is not clear, in light of *DeSanti*, what remedy would remain for the third and fourth classes of Plaintiffs (i.e., those Plaintiffs who pleaded guilty or no contest, or were found not guilty after trial), or in which forum, and when, that remedy might be sought. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System (2d ed. 1973) (Supp.1981 at 279–80, 284).

12. Ironically, it appears that if Plaintiffs are successful in certifying the class they seek, they insure that *Younger* abstention would apply to the *entirety* of their lawsuit, in light of the *DeSanti* case.